UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| FEDERAL HOUSING FINANCE AGENCY, | Case No. 2:17-cv-00914-GMN-PAL |
|---|---|
| Petitioner, | **ORDER** |
| v. | |
| SFR INVESTMENTS POOL 1, LLC, | (Mot. Enforce Subpoena – ECF No. 1; Mot. Quash Subpoena – ECF No. 15; Cross-Mot. for Order – ECF No. 17) |
| Respondent. | |

Before the court is the Motion for Order Enforcing Subpoena *Duces Tecum* (ECF No. 1) by Petitioner, the Federal Housing Finance Agency ("FHFA"), filed in its capacity as Conservator for the Federal National Mortgage Association and Federal Home Loan Mortgage Corporation ("Fannie Mae" and "Freddie Mac," jointly, the "Enterprises"). Also before the court are Respondent SFR Investments Pool 1, LLC's ("SFR") Motion to Quash Subpoena (ECF No. 15) and FHFA's Cross-Motion for Order Requiring SFR to Comply With Subpoena (ECF No. 17). The court has considered the parties' Motions, Responses (ECF Nos. 16, 21), and Replies (ECF Nos. 20, 23). These Motions are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(3) and LR IB 1-7(m) of the Local Rules of Practice.

## **BACKGROUND**

In response to the crisis in the housing and mortgage market, Congress enacted the Housing and Economic Recovery Act of 2008 ("Recovery Act"), Pub. L. No. 110-289, 122 Stat. 2654 (codified in various sections of 12 U.S.C.). *See* 12 U.S.C. § 4501; *Perry Capital LLC ex rel. Inv. Funds v. Mnuchin*, 864 F.3d 591, 598 (D.C. Cir. 2017). The Recovery Act created FHFA, 12 U.S.C. § 4511, and placed the Enterprises into conservatorship "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs," *id.* § 4617(a). "The Recovery Act endows FHFA with extraordinarily broad flexibility to carry out its role as conservator." *Perry Capital*, 864 F.3d

at 606.  FHFA may issue administrative subpoenas pursuant to its statutory authority in 12 U.S.C. §§ 4617(b)(2)(I) and 4588.

I. **PROCEDURAL HISTORY**

FHFA and the Enterprises are involved in extensive litigation in the District of Nevada to protect their interests in liens encumbering properties that have been the subjects of homeowners' association ("HOA") foreclosure sales under Nevada law.  Through the litigation, FHFA became aware that SFR and/or its affiliates acquired multiple properties through, or subsequent to, HOA foreclosure sales.  To further its litigation efforts, FHFA asked its counsel to investigate and identify all properties that SFR, its affiliates, and other similarly situated entities acquired that were the subjects of HOA sales that took place when Enterprise liens encumbered the properties.  Counsel analyzed instruments recorded with Nevada county clerks' offices and data compiled by the State of Nevada's Office of the Ombudsman for Owners in the Common-Interest Communities and Condominium Hotels, but determined that those records and data were incomplete and inadequate to identify all affected properties.

Pursuant to 12 U.S.C. §§ 4588(c) and 4617(b)(2)(I), FHFA issued and served a subpoena *duces tecum* (the "Subpoena") to SFR in late November 2016.  *See* Mot. Ex. 1 (ECF No. 1-2), Subpoena.[1]  An exhibit attached to the Subpoena identified 89 properties for which FHFA, the

---

[1] The Subpoena asks SFR for the following:

> Identify each property in which You have held or claimed an interest and that was the subject of an HOA foreclosure completed under New Rev. Stat. § 116.3116 between September 18, 2009 and the present.  Do so by stating, and producing documents sufficient to show, for each property:
> a) the street address (including unit number, if any, and city, state, and zip code);
> b) the Assessor's Parcel Number (or APN);
> c) the identity of the selling HOA;
> d) the date and purchase price of the HOA foreclosure sale, and, if not the same, the date and purchase price for Your acquisition of any interest in the property;
> e) the amount of the HOA's delinquent lien as of the HOA foreclosure sale;
> f) the name and business address of the successful bidder at the HOA foreclosure sale;
> g) the nature and extent of Your actual or claimed interest;
> h) the name and business address of the record title holder at the time You held or claimed an interest, and, if not Recipient, the record title holder's relationship with Recipient; and
> i) for any subsequent sale of any interest in the property by You, the date, purchase price, and identity and contact information of the purchasers.
> You may, but need not, exclude from your response those properties specifically identified

2

Enterprises, or the Enterprises' loan servicers are already litigating claims against SFR or an affiliate, along with an additional 35 properties that are the subjects of other litigation. Those 124 properties were expressly excluded from the Subpoena's scope. At SFR's request, FHFA extended the response deadline 30 days. Counsel for SFR responded to the Subpoena via letter with objections and declined to produce the information or documents requested. *See* Mot. Ex. 4 (ECF No. 1-2), Jan. 27, 2017 Letter from Jacqueline Gilbert to Michael Johnson.

On March 31, 2017, FHFA commenced this action petitioning the court for an order requiring SFR to comply with the Subpoena. SFR filed its Motion to Quash, on May 31, 2017, which prompted FHFA's Response and Cross-Motion. After the moving papers were fully briefed, the parties filed multiple Notices (ECF Nos. 25, 26, 29, 30) of new authority and responses.

## II. THE PARTIES' POSITIONS

### A. Petitioner FHFA

FHFA's motions assert the agency needs the information and documents sought by the Subpoena to investigate potential threats to its and the Enterprises' interests in liens encumbering properties in Nevada common interest communities and to determine what steps are necessary to protect those interests. *See* Mot. Ex. 3 (ECF No. 1-2), Decl. of Alfred Pollard, FHFA General Counsel. The scope of the court's review in a subpoena enforcement action is narrow. Federal courts only evaluate whether: (1) Congress has granted the agency authority to investigate; (2) procedural requirements have been followed; and (3) the evidence is relevant and material to the agency's investigation. Ninth Circuit case law states that an affidavit by an agency official is sufficient to establish a prima facie showing of these requirements. The Subpoena readily meets those three criteria, and FHFA's general counsel submitted a declaration establishing a prima facie showing. Thus, FHFA has met the prerequisites for enforcement.

First, FHFA points out that Congress granted the agency broad flexibility and authority to carry out its role as the Enterprises' conservator, including subpoena power. The agency may

---

in the attached Exhibit A, which lists properties known to be the subject of pending litigation to which Recipient is a party.

*Id*. Substantially identical subpoenas were served on other similarly situated entities at around the same time. *See* Notice of Related Cases (ECF No. 7).

3

exercise its expansive grants of permissive, discretionary authority" as it "determines is in the best interests of" the Enterprises or FHFA. *Perry Capital*, 848 F.3d at 607 (citing 12 U.S.C. § 4617(b)(2)(J)). FHFA's broad powers necessarily include the power to investigate any potential threats to the Enterprises' assets. FHFA argues the Subpoena was issued for the purpose of preserving the Enterprises' assets—a power expressly provided in the Recovery Act.

Second, FHFA followed all necessary procedural requirements when issuing the Subpoena. FHFA reviewed publically available information to identify all Enterprise liens that may be at risk. That information was inadequate and incomplete; thus, FHFA determined subpoenas were necessary to conserve and preserve Enterprise assets. The agency's director approved issuance of a subpoena as required by § 4617(b)(2)(I)(ii), and FHFA then issued the Subpoena and caused it to be served on SFR.

Third, the information and documents sought in the Subpoena are relevant and material to FHFA's investigation. FHFA argues that the information sought in the Subpoena is not in the possession of the FHFA or the Enterprises, and the Subpoena is the only practical and reliable way for the agency to obtain the information. Public record searches are inadequate for multiple reasons. For instance, only SFR knows whether some or all of its property purchases were recorded under d/b/a names, names of affiliates, or names of other nominees. In addition, even as to properties recorded in SFR's own name, public records frequently contain slight variation, erroneous, or abbreviated entries that make name searching impractical and unreliable (*i.e.*, "SFR Investments Pool 1 LLC," "S F R Investments Pool L L C," "S F R Investments Pool I L L C"). FHFA not in a position to reliably interpret available public records because the agency lacks knowledge of SFR's d/b/a and assumed names, the names of SFR's affiliates and nominees, and whether SFR or an affiliate or nominee (as opposed to an unaffiliated party) is the entity referred to in property records that include similar but non-identical names.

Because FHFA has satisfied the three requirements for enforcement, an order enforcing the Subpoena is appropriate.

**B. Respondent SFR**

SFR objects to the Subpoena and asks the court to quash it in its entirety. SFR challenges

4

the Subpoena because it requests information that is: (1) not relevant to FHFA's stated purpose, (2) not sufficiently definite, (3) already in FHFA's possession or control, (4) outside of the statute of limitations, and (3) overly broad and unduly burdensome since the information is publicly available. Mot. to Quash (ECF No. 15).

SFR asserts the Subpoena request lacks relevance because none of FHFA's properties are actually threatened. FHFA claims its interest cannot be extinguished through NRS Chapter 116 sales without its consent; thus, none of its property is threatened. SFR argues any evidence of ownership should be in FHFA's possession; thus, none of the information FHFA seeks from SFR could ever prove the agency's ownership interest.

The information requested is not sufficiently definite because the Subpoena seeks a blanket of information over a blanket period of time. The Subpoena does not pinpoint the properties, by address or assessor's parcel number (*i.e.*, APN), in which FHFA claims an interest that might be jeopardized. Rather, the Subpoena asks SFR to tell FHFA what properties it may claim an interest. Without a definite articulation of what properties are in possible jeopardy, SFR claims that all the information sought by the Subpoena is overreaching.

The Subpoena requests records outside the statute of limitations provided in 12 U.S.C. § 4617(b)(12). SFR argues the appropriate limitations period is three years because tort actions must be filed within two years under Nevada law and the longer federal statutory period would apply. Because the Subpoena requests information as far back as September 18, 2009, SFR claims FHFA requests information outside the statute of limitations. Assuming FHFA could cure all the other defects with the Subpoena, the agency would only be entitled to information from March 30, 2014, to March 30, 2017.

SFR claims the Subpoena requests information that is already in FHFA's control. Citing *United States v. Powell*, 379 U.S. 48, 57–58 (1964), SFR states that an agency issuing an administrative subpoena must show the information sought is not already in its possession. Because the Enterprises have servicing contracts with sub-servicers that require those sub-servicers to maintain records pertaining to each loan, and FHFA succeeded to the Enterprises' contractual rights, SFR maintains that FHFA already has all the records requested within its

5

custody and control. Furthermore, FHFA possesses adequate means to gather the information it seeks from public sources. Thus, even if the sub-servicers failed to fulfill their duties to maintain the Enterprises' records, the Subpoena should still be quashed because FHFA could obtain the information is publicly available.

SFR further asserts the Subpoena is oppressive and unduly burdensome. SFR is not a large corporation. It is a small business comprised of approximately eight employees. In contrast, the resources and manpower of FHFA, its Enterprises, and authorized servicers far exceed that of the SFR. In addition, none of the information sought by the Subpoena is readily accessible. With the exception of the deed received after purchasing a property, SFR does not possess any of the public records instruments leading up to a HOA foreclosure sale. SFR does not obtain those documents until it is forced into litigation. Compliance with the Subpoena would be difficult and time consuming. As a matter of law, the information the FHFA seeks can only be obtained in the public record. If required to produce these documents, SFR would need to research, order, and pay for public records for over 600 properties, which is something FHFA is capable of and better equipped to do itself. SFR would be forced to hire and pay third-parties or locate and obtain the requested records, as well as outside counsel, imposing an extreme hardship on SFR. *See* Reply Ex. 1 (ECF No. 20-1), Decl. of Christopher Hardin at 3–4, ¶ 15. The Subpoena is therefore unnecessary, vexatious, and designed to harass SFR.

SFR estimates its cost of compliance with the Subpoena is approximately $312,000. *See* Reply Ex. 2 (ECF No. 20-2), Decl. of Howard Kim at 4, ¶ 10. SFR owns approximately 650 parcels of real property. Mr. Kim bills at a rate of $450 per hour. Based on an average time of one hour per property, he estimates he will bill SFR $450 per property for a total of $292,500 (650 x $450). Additionally, he estimates SFR would spend approximately $19,500 in costs obtaining documents from the Clark County Recorder. The cost may be lower depending on whether SFR already possesses requested documents relating to each property, but cross-referencing SFR's files against the county recorder's records will result in a proportionately higher time billing.

C. **FHFA's Responsive Arguments**

FHFA asserts that SFR's objections to the Subpoena lack merit. The standard for

enforcement is not necessity, it is relevance. Citing *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089 (D.C. Cir. 1992), FHFA notes that the court is obligated to accept the "the agency's own appraisal of relevancy . . . so long as it is not obviously wrong." In light of the broad deference the court must afford the agency, it is SFR's burden to show that the subpoenaed information is irrelevant, and SFR has not done so.

The records requested in the Subpoena are not within FHFA's possession or control. FHFA argues the *Powell* decision interpreted a statute specific to the Internal Revenue Service (IRS) that protects taxpayers from "unnecessary examination," 379 U.S. at 51 (citing 26 U.S.C. § 7605(b)), and does not establish standards for all administrative subpoenas. Because the agency is not subject to a statute similar to the one limiting the IRS's examinations, it is not clear that FHFA has any burden to show it does not possess the information as a prerequisite to enforcement. Even if FHFA does, the Ninth Circuit has made clear that the burden "is 'a slight one' " that can be satisfied with a sworn declaration, and the burden then shifts to the recipient to rebut the agency's claim. *Stewart v. United States*, 511 F.3d 1251, 1254–55 (9th Cir. 2008) (citing *Powell*, 379 U.S. at 57–58). FHFA has provided a sworn declaration explaining why it does not have, and cannot readily and reliably obtain, the information. SFR offers nothing in response but a bare assertion that FHFA possesses the information. SFR's unsupported and incorrect assertion should be disregarded.

FHFA argues the statute of limitations does not limit the Subpoena because "a party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it." *EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (quotation omitted). Whether SFR could assert a statute of limitations defense to some future action is not relevant here.

The Subpoena is not oppressive or unduly burdensome. FHFA narrowly tailored the Subpoena to request only highly germane information that a seasoned property investment entity such as SFR would maintain in a readily accessible form in the ordinary course of business. Without the subpoenaed information, FHFA would be forced to rely on an inadequate public-record search that would invite inefficient, piecemeal litigation. FHFA would have little choice but to bring multifarious actions as they discover additional properties potentially placing their

interests at risk and learning who claims an interest in each. Such piecemeal litigation would be far more burdensome for FHFA, SFR, and the court, than SFR's compliance with the Subpoena.

Additionally, SFR's arguments suggest that the court require FHFA and the Enterprises to identify the properties for which they claim an interest. The Enterprises own *hundreds of thousands* of mortgages in Nevada. It would be inefficient to require FHFA to provide SFR with a list of hundreds of thousands of properties and then ask SFR to identify the ones it purchased at an HOA sale. If nothing else, SFR must possess a complete list of its own properties, which means that SFR, unlike FHFA, would be able to search public records with the confidence of knowing the full universe of properties at issue.

## **DISCUSSION**

**I.    LEGAL STANDARD**

"Congress may authorize federal agencies to issue administrative subpoenas without court authorization for any purpose within Congress's constitutional power." *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1114 (9th Cir. 2017) (citing *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 208–09 (1946)). "But while an agency may issue a subpoena without prior judicial approval, it must invoke the aid of a federal court to enforce" a subpoena. *Id*. at 1114–15 (citation omitted).

The scope of the court's inquiry is "quite narrow" in a proceeding to enforce an administrative subpoena. *United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012) (quoting *EEOC v. Children's Hosp. Med. Ctr.*, 719 F.2d 1426, 1428 (9th Cir. 1983) (en banc), *overruled on other grounds by statute as recognized in Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 (9th Cir. 1994)). The court considers three key questions when evaluating an agency's subpoena for enforcement: (1) whether Congress granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation. *Golden Valley*, 689 F.3d at 1113 (quoting *Children's Hosp.*, 719 F.2d at 1428). "An affidavit from a government official is sufficient to establish a prima facie showing that these requirements have been met." *FDIC v. Garner*, 126 F.3d 1138, 1142–43 (9th Cir. 1997) (citing *United States v. Stuart*, 489 U.S. 353, 360 (1989)). If the agency satisfies the three requirements, "the subpoena should be enforced unless the party being investigated proves the

inquiry is unreasonable because it is overbroad or unduly burdensome." *Children's Hosp.*, 719 F.2d at 1428; *see also Golden Valley*, 689 F.3d at 1113 ("An administrative subpoena may not be 'too indefinite or broad'.") (citation omitted). Thus, even when the other criteria are satisfied, "a Fourth Amendment 'reasonableness' inquiry must also be satisfied." *Id*.

## II. ANALYSIS

### A. *Powell* does not apply to FHFA Subpoena Enforcement Actions

The deferential standard for judicial enforcement described in *Children's Hospital* applies to the administrative subpoenas and orders issued by most federal agencies.[2] The Supreme Court announced this standard in its 1946 *Oklahoma Press* decision. In *Powell*, the Supreme Court established a similar, but slightly higher burden for IRS to enforce administrative summons.[3] The Ninth Circuit has extended *Powell* to subpoena enforcement actions by the Department of Housing and Urban Development (HUD) and the Securities and Exchange Commission (SEC).[4] Except for HUD and SEC, the *Children's Hospital* standard has applied to all other federal agencies. *See, e.g.*, *EEOC v. Bashas', Inc.*, 828 F. Supp. 2d 1056, 1062 (D. Ariz. 2011) ("[W]hile the Ninth Circuit applies the *Powell* factors in IRS subpoena enforcement actions, it uniformly applies the *Children's Hospital* criteria to EEOC and other non-IRS administrative subpoenas."), *vacated in part on other grounds*, 585 F. App'x 325 (9th Cir. 2014).[5]

---

[2] *See, e.g.*, *Okla. Press*, 327 U.S. at 216–17 (Department of Labor subpoena *duces tecum*); *United States v. Morton Salt Co.*, 338 U.S. 632, 653 (1950) (FTC subpoena); *Golden Valley*, 689 F.3d at 1113–16 (DEA subpoena); *Reich*, 32 F.3d at 444 (OSHA subpoena); *Garner*, 126 F.3d at 1142–43 (FDIC subpoena); *EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 446 (9th Cir. 1988) (EPA subpoena); (quoting *Peters v. United States*, 853 F.2d 692, 699–700 (9th Cir. 1988) (INS subpoena); *Children's Hosp.*, 719 F.2d at 1428–29 (EEOC subpoena); *NLRB v. Int'l Medication Sys., Ltd.*, 640 F.2d 1110, 1114 (9th Cir. 1981) (NLRB subpoena); *Fed. Maritime Comm'n v. Port of Seattle*, 521 F.2d 431, 431 (9th Cir. 1975) (discovery orders of the Commission's administrative law judge); *Consumer Fin. Prot. Bureau v. Future Income Payments, LLC*, 252 F. Supp. 3d 961, 966 (C.D. Cal. 2017) (civil investigative demand by CFPB).

[3] The IRS does not need to meet a standard of probable cause to enforce an administrative summons, but the agency must show: (1) "the investigation will be conducted pursuant to a legitimate purpose," (2) "the inquiry may be relevant to the purpose," (3) the information sought is not already within the agency's possession, and (4) proper administrative procedures were followed. *Powell*, 379 U.S. at 57–58.

[4] *See Lynn v. Biderman*, 536 F.2d 820, 824 (9th Cir. 1976) (HUD subpoena); *Jerry T. O'Brien, Inc. v. S.E.C.*, 704 F.2d 1065, 1066–67 & n.5 (9th Cir. 1983) (SEC subpoena), *rev'd on other grounds*, *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984).

[5] The Ninth Circuit applied an "intermediate standard" when evaluating subpoenas issued to family members or other non-targets of an FDIC investigation into corporate wrongdoing by bank directors.

SFR's briefing asserts that the *Powell* factors apply to this FHFA subpoena enforcement action, but provides no authority for this proposition. FHFA argues *Powell* did not establish standards for all administrative subpoenas since the case interpreted an IRS-specific statute that protects taxpayers from "unnecessary examination." Because FHFA is not subject to a statute such as the one limiting the IRS's examinations, it is not clear that *Powell* applies. The court should therefore apply the standard set forth in *Children's Hospital* and its progeny.

The parties do not cite and the court has not found any Ninth Circuit authority, or any other published case law, holding the *Powell* factors must be applied in FHFA subpoena enforcement actions. However, the two standards are not incompatible. *Children's Hosp.*, 719 F.2d at 1428 (collecting cases as authority for the three-factor test, including *Powell*, 379 U.S. at 57–58). Both standards require agencies to follow the appropriate administrative procedures. Both standards require subpoenaed evidence to be relevant to the agencies' investigation. Once the three basic criteria for enforcement are satisfied, *Children's Hospital* requires the court to conduct a "Fourth Amendment 'reasonableness' inquiry." *Golden Valley*, 689 F.3d at 1113 (citation omitted). The reasonableness inquiry subsumes *Powell*'s first requirement (*i.e.*, legitimate purpose of the investigation). *See, e.g.*, *Univ. of Pennsylvania v. EEOC*, 493 U.S. 182, 191 (1990) (noting that when a court is asked to enforce an EEOC subpoena, it has a general responsibility to assess an employer's contentions that a demand for information "has been made for an illegitimate purpose").[6] The reasonableness inquiry also encompasses *Powell*'s third requirement (*i.e.*, agency does not already possess the information). *See, e.g.*, *Garner*, 126 F.3d at 1146 (rejecting appellants' contention that much of the information was already in FDIC's possession because

---

*Garner*, 126 F.3d at 1145 (citing *In re McVane*, 44 F.3d 1127, 1138 (2d Cir. 1995)). However, the intermediate standard does not apply to subpoenas that seek records solely from corporate participants. *Id.* at 1145 n.2 ("The Supreme Court has held that corporations possess much weaker privacy interests than individuals.") (citing *Morton Salt*, 338 U.S. at 652); *see also McVane*, 44 F.3d at 1136 (holding that corporations "can claim no equality with individuals in the enjoyment of a right to privacy").

[6] *See also Reich*, 32 F.3d at 449 (after finding that OSHA satisfied the *Children's Hospital* test, considering and rejecting respondent's argument that the subpoena was an abuse of process designed to harass and punish); *Garner*, 126 F.3d at 1146 (after completing *Children's Hospital* analysis, considering and rejecting appellants' argument that FDIC issued the subpoenas to harass); *Bashas', Inc.*, 828 F. Supp. 2d at 1064 (finding that the framework of the *Children's Hospital* "encompasses abuse of process").

they failed to specifically identify duplicative requests). A subpoena requesting information that is already in an agency's possession imposes an undue burden.

Both *Powell* and *Children's Hospital* require administrative subpoenas to be reasonable. The principle difference between the two standards is that *Powell* places the initial burden on the agency to show legitimacy of purpose and lack of possession of the requested documents. Because the reasonableness inquiry embodies these factors, and the court has found no authority indicating that *Powell* is applicable to FHFA, the court finds that placing an initial burden on FHFA to meet the *Powell* factors would be at odds with Ninth Circuit case law. *Garner*, 126 F.3d at 1144 (stating that the party opposing the subpoena "bears the burden of demonstrating that the subpoena is unreasonable"); *see also, e.g.*, *Bashas', Inc.*, 828 F. Supp. 2d at 1064 (finding that prejudice would not result from applying the *Children's Hospital* standard, rather than *Powell*). Accordingly, the court will evaluate the Subpoena under the criteria stated in *Children's Hospital* and its progeny.

**B. The Subpoena Satisfies the Prerequisites for Enforcement**

Here, the Subpoena readily meets the *Children's Hospital* standard. FHFA has submitted the Declaration of Alfred Pollard, *see* Mot. Ex. 3 (ECF No. 1-2), as prima facie evidence that the requirements have been met. SFR does not contest FHFA's authority to issue the subpoena or that procedural requirements were followed. Rather, SFR asserts that the Subpoena seeks irrelevant information because none of the information FHFA seeks could ever prove the agency or Enterprises' ownership interest. The court rejects this argument.

" 'Relevancy is determined in terms of the investigation rather than in terms of evidentiary relevance'." *Golden Valley*, 689 F.3d at 1113 (quoting *EEOC v. Fed. Exp. Corp.*, 558 F.3d 842, 854 (9th Cir. 2009)). The Supreme Court has held that the relevance requirement is "not especially constraining." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984); *see also Univ. of Pennsylvania*, 493 U.S. at 188 (noting that the agency does not have to show a "particularized necessity of access, beyond a showing of mere relevance"); *Golden Valley*, 689 F.3d at 1113.

FHFA has shown the subpoena seeks information relevant to its investigation of which Enterprise liens may be at risk if purchasers at HOA foreclosure sales claimed those sales extinguished the liens. Congress granted FHFA broad flexibility and authority to carry out its role

as the Enterprises' conservator. The court finds that the subpoenaed information is relevant to the FHFA's statutory purpose of preserving the Enterprises' assets. Because FHFA has met the three prerequisites for enforcement, the burden shifts to SFR to show the Subpoena fails a reasonableness inquiry.

### C. The Reasonableness Inquiry

#### 1. The Statute of Limitations

SFR argues the Subpoena should be quashed because it requests records outside the applicable statute of limitations, which it claims is three years. *See* 12 U.S.C. § 4617(b)(12). The Ninth Circuit has held that "a party may not defeat agency authority to investigate with a claim that could be a defense if the agency subsequently decides to bring an action against it." *Karuk Tribe Hous. Auth.*, 260 F.3d at 1076 (quoting *Children's Hosp.*, 719 F.2d at 1429); *see also Pac. Mar. Ass'n v. Quinn*, 491 F.2d 1294, 1296 (9th Cir. 1974) (party may not raise a factually disputed statute of limitations defense in a challenge to an administrative subpoena). The statute of limitations provided in § 4617(b)(12) does not limit the Subpoena because SFR's possible statute of limitations defense to some future action is not relevant here.

#### 2. Overbreadth and Undue Burden

An administrative subpoena "may not be so broad so as to be in the nature of a 'fishing expedition'." *Garner*, 126 F.3d at 1146 (quoting *Peters*, 853 F.2d at 700). To resist enforcement, the subpoenaed party must specifically identify how the subpoena constitutes a fishing expedition. *Id*. Ninth Circuit precedent provides little guidance regarding what constitutes "unduly burdensome" in a subpoena enforcement action, but multiple district courts in this circuit have addressed this analysis. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Future Income Payments, LLC*, 252 F. Supp. 3d 961, 970 (C.D. Cal. 2017); *NLRB v. Vista Del Sol Health Servs., Inc.*, 40 F. Supp. 3d 1238, 1265–66 (C.D. Cal. 2014); *Bashas', Inc.*, 828 F. Supp. 2d at 1070–71; *EEOC v. Aaron Bros. Inc.*, 620 F. Supp. 2d 1102, 1106 (C.D. Cal. 2009). These district courts have followed precedent from other circuits demonstrating that the standard for undue burden is not easy to meet.[7]

---

[7] *See also EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993) ("A court will not excuse compliance with a subpoena for relevant information simply upon the cry of 'unduly burdensome'."); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 477 (4th Cir. 1986) ("[T]he burden of

*See, e.g., EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 653 (7th Cir. 2002) (noting that a subpoenaed employer "carries the difficult burden of showing that the demands are unduly burdensome or unreasonably broad "). To demonstrate that an administrative subpoena imposes an undue burden, a subpoenaed party must provide specific evidence showing that compliance "threatens to unduly disrupt or seriously hinder normal operations of a business." *Future Income*, 252 F. Supp. 3d at 970 (quoting *Texaco*, 555 F.2d at 882); *Aaron Bros. Inc.*, 620 F. Supp. 2d at 1106 (quoting *Maryland Cup Corp.*, 785 F.2d at 479). Merely referencing the agency's extensive requests or asserting that compliance would be costly is not enough. *See Garner*, 126 F.3d at 1145–46; *Citicorp Diners Club*, 985 F.2d at 1040 (employer's affidavit was insufficient to show undue burden because it did not show "how compliance would impact the normal operations").

SFR asserts the Subpoena is overbroad and overreaching because it seeks a blanket of information over a blanket period of time. The Subpoena requests information from SFR regarding all properties in which it claims an interest instead of pinpointing properties in which FHFA claims an interest that might be jeopardized by address or APN. FHFA claims the Enterprises own hundreds of thousands of mortgages in Nevada, and requiring it to provide SFR with a list of all these properties would be inefficient.

FHFA provided an affidavit showing that public record searches are inadequate to identify SFR's property interests for multiple, concrete reasons. It argues that the Subpoena is the only practical way for the agency to reliably obtain the information. *See* Mot. Ex. 3 (ECF No. 1-2), Pollard Decl. In particular, FHFA argues that public records frequently contain slight variation, erroneous, or abbreviated entries that make name searching impractical and unreliable (*i.e.*, "SFR Investments Pool 1 LLC," "S F R Investments Pool L L C," "S F R Investments Pool I L L C").[8]

---

proving that an administrative subpoena is unduly burdensome is not easily met."); *FTC v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977); *U.S. Commodity Futures Trading Comm'n v. Ekasala*, 62 F. Supp. 3d 88, 94 (D.D.C. 2014) ("The standard for showing that a request is unduly burdensome . . . is a high one.").

[8] These slight variations of SFR's name are also present in the District of Nevada's docket where SFR is a party to approximately 300 cases. Thus, a query for "SFR" as a party returns "SFR Investment Pool 1, LLC," "SFR Investment Pool1, LLC," "SFR Investments Pool 1, LLC," "SFR Investments Pool 1, Inc.," "SFR Investments Pool 1, LLC, a Nevada limited liability company," "SFR Investments Pool I, LLC," "SFR Investments, LLC," and "SFR, Inc." Only one of these parties— SFR, Inc.—is not affiliated with the Respondent in this case, and the rest are aberrations of SFR's correct legal name.

SFR claims FHFA is not being candid about its search methods and investigation because the agency can easily search the public record to obtain the information sought. SFR's counsel represents that the Clark County and Washoe County Recorders' websites allow searches of recorded documents by identifiers such as individual name, company name, instrument number, APN, document type, document number, grantor / grantee, date, etc. *See* Reply Ex. 2 (ECF No. 20-2), Kim Decl. at 2, ¶ 6. SFR argues "FHFA can simply enter 'SFR Investments Pool 1, LLC' into the search page" and be provided with a list of all SFR recorded documents, obviating the need for the Subpoena. Reply (ECF No. 20) at 6:3–5.

The court agrees with FHFA that a seasoned property investment entity such as SFR would possess and maintain a complete list of its properties in the ordinary course of business. However, the court finds that the subpoena is overbroad and unduly burdensome in its request for documents sufficient to show the subcategories of information sought in paragraphs (c) through (i). It is also unreasonable to expect SFR to obtain and provide information from the recorder's office and non-parties. Thus, although the court will enforce the subpoena, it will limit enforcement to a narrower subset of information that SFR must produce. The court will require SFR to provide FHFA with the street address (including unit number, if any, city, state, and zip code) and Assessor's Parcel Number (APN) of each property that SFR and its affiliates have held or claimed an interest and that was the subject of an HOA foreclosure completed under NRS 116.3116 between September 18, 2009, and the present.

For the reasons explained,

**IT IS ORDERED:**

1. Federal Housing Finance Agency's Motion for Order Enforcing Subpoena *Duces Tecum* (ECF No. 1) and Cross-Motion for Order Requiring SFR to Comply With Subpoena (ECF No. 17) are **GRANTED IN PART AND DENIED IN PART** as explained in this order.

2. SFR Investments Pool 1, LLC's Motion to Quash Subpoena *Duces Tecum* (ECF No. 15) is **GRANTED IN PART AND DENIED IN PART** as explained in this order.

///

3. On or before **April 27, 2018**, SFR must provide FHFA with the street address (including unit number, if any, city, state, and zip code) and Assessor's Parcel Number (APN) of each property that SFR and its affiliates have held or claimed an interest and that was the subject of an HOA foreclosure completed under NRS 116.3116 between September 18, 2009, and the present.

4. SFR shall not be required to provide FHFA with other information sought in the subpoena at this time.

Dated this 27th day of March, 2018.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE